In re:
Mountain Highlands, LLC,
    Debtor.                              No. 11 - 06-10011 - SA

**MEMORANDUM OPINION ON DEBTOR'S
MOTION TO DISMISS BANKRUPTCY CASE AND
<u>DEBTOR'S MOTION FOR LEAVE TO PAY UNDISPUTED CLAIMS</u>**

This matter is before the Court on the Debtor's Motion to Dismiss Bankruptcy Case (doc 146)("Dismissal Motion") and Magnolia Mountain Limited Partnership's ("MMLP") Objection thereto (doc 155) and MMLP's Motion to convert [Case] to Chapter 7 (doc 173). Also before the Court are Debtor's Motion for Leave to Pay Undisputed Claims (doc 147)("Payment Motion") and MMLP's Objection thereto (doc 156). Signature Capital Funding, Inc. ("Signature") also filed a Limited Objection to the Motion To Dismiss (doc 157) which it later withdrew (doc 164). The Court has reviewed the pleadings and the file, and consulted its notes from the confirmation hearing (conducted February 28 and March 22, 2007) and applicable authorities and finds that Debtor's Motions are well taken and should be granted. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A).

<u>**FACTS**</u>

1. Debtor filed a voluntary petition under Chapter 11 on January 5, 2006 and remains a debtor-in-possession.

2. After obtaining an extension, Debtor filed its Summary of Schedules, Statistical Summary, Schedules A-J, and Statement of Financial Affairs on January 25, 2006 (doc 10).

3. Schedule A lists approximately $12 million in real property, and discloses that Signature claims a lien against all Schedule A property except water rights and "Silvertree." Schedule D lists Signature as a secured creditor with a claim of $1.5 million.

4. Schedule D also lists David Hendricks, d/b/a Magnolia Mountain, Ltd. as a secured creditor on two parcels of land: a claim of $450,000 against Silvertree and a claim of $500,000[1] as a second mortgage against 3 other parcels.

5. The only other secured creditor is Taos County holding a claim of $83,000 for taxes.

6. Debtor listed no priority claims on Schedule E.

7. Debtor lists seven unsecured creditors holding an approximate total of $220,000 of claims.

8. On April 4, 2006, Debtor filed its Plan and Disclosure Statement (docs 21 and 22).

9. Over the next few months Debtor filed a first modification to plan (doc 44), a second modification to plan (doc 48), a supplement to the disclosure statement (doc 49), a third

---

[1] This claim is listed as totally unsecured based on the existence of prior liens.

modification to plan (doc 62), an Amended Chapter 11 Plan (doc 63) and Amended Disclosure Statement (doc 64).  On December 19, 2006 the Court entered its Order Approving Disclosure Statement and Setting Hearing on Confirmation of Plan.  (Doc 69).

10. Debtor filed a motion to sell substantially all of its real and personal property under Section 363(b) on November 9, 2007 (doc 106).  MMLP and Signature objected to the sale (docs 125 and 126).

11. The Court denied confirmation of the Chapter 11 Plan on December 14, 2007 and set a status conference for January 2008 (doc 132).  The Memorandum Opinion entered with the Order denying confirmation contains a detailed history of this case, analysis of the Plan, and reasons supporting the denial of confirmation (doc 131).

12. Debtor, MMLP and Signature resolved their differences regarding, among other things, the Section 363 sale and submitted a Stipulated Interim Order authorizing the Section 363 sale ("Order") on December 17, 2007 (doc 137).  The Order authorizes the Debtor to consummate the sale, directs the title company to pay closing costs, all prior and current prorated real property taxes, Signature's claim in the amount of $2,238,965.54 plus per diem interest, $1,577,000 to Debtor's counsel to be held in trust pending

Case 06-10011-s11    Doc 183    Filed 08/14/08    Entered 08/14/08 09:55:42 Page 3 of 13

further order on MMPL's claims[2], a mortgage against a related entity's property, and the balance to Debtor. Signature in turn agreed to remit $90,000.00 of its proceeds to the court registry pending resolution of Signature's claim for attorneys fees. MMLP and/or David Hendricks in turn agreed to include some of its/his real property as part of the sale and the Order sets out different scenarios for escrowing documents and destroying documents at appropriate times.

13. On January 24, 2008 Debtor filed the Dismissal Motion (doc 146) and the Payment Motion (doc 147). The Dismissal Motion alleges that the sale of virtually all assets was completed at a net price sufficient to pay all claims in the bankruptcy case, that Debtor is filing a motion to pay said claims, that Debtor has already paid the secured claim of Signature, and that Debtor has placed funds[3] in the registry to protect the claims of MMLP and Hendricks. The Motion also alleges that the Court has fixed a deadline of April 7, 2007 to file a new plan[4], but that Debtor will not file such

---

[2]A later order authorized and directed Debtor's counsel to deposit this $1,577,000 into the Court Registry (doc 139).

[3]And, that some of the funds are proceeds of the sale that are not estate property and to which MMLP and Hendricks make claim.

[4]This was an oral order at the January 2008 status
(continued...)
Page -4-

a plan, and that conversion of the case would not be in the best interests of creditors because it would cause a substantial increase in administrative expenses and a substantial delay in distribution of payments to creditors. The Dismissal Motion also invites the Court to fashion any conditions precedent to dismissal, such as escrowing the $1.577 million with the United States District Court and/or paying all undisputed unsecured creditors in full. The Payment Motion recites that Debtor has sold its assets and provided for payment of secured claims, and requests permission to pay seven[5] unsecured creditors their claims (totaling $21,301), plus 6% simple interest from the filing date. Debtor amended the Payment Motion on January 28, 2008 (doc 152) to correct the amounts to be paid to $40,207.

14. MMLP objected to both the Dismissal Motion(doc 155) and the Payment Motion (doc 156). Signature filed a limited objection to the Dismissal Motion (doc 157) which it later

---

[4](...continued)
conference. See Minutes, doc 145.

[5]The seven creditors are not identical to those on Schedule F; it appears that insider creditors were removed from the list and others added. The insiders removed were Desert Highlands, LLC, Masaren, LLC, Pepper Highlands, LLC, and The Shepard's Group, Inc. The Debtor's designated representative Robert Janes is an officer for each of the insiders, and in any event, none of the insiders has objected to the amended Payment Motion.

withdrew (doc 164). No other creditor, party in interest or the United States Trustee objected to either motion.

15. MMLP and Hendricks filed a Motion to Convert this case to Chapter 7. Doc 173. Most of that motion argues that there is cause to convert or dismiss the case, with which the Court agrees. Part IV of the Motion states only one reason why MMLP and Hendricks would prefer conversion over dismissal:

> Magnolia and Hendricks have secured claims[6] to the proceeds of the sale of Ski Rio, which is Debtor's only remaining asset. Magnolia and Hendricks will lose their security upon dismissal[7]. Thus Debtor will have effectively used the Bankruptcy Court to complete a sale of its own property, and property of Magnolia and Hendricks, take these proceeds, and deprive Magnolia and Hendricks of any amounts due[8]. It is in Magnolia's and Hendricks' interest, and possibly the interest of every unsecured creditor remaining[9], for this case to be

---

[6] Movants assume they are secured, a conclusion with which this Court does not necessarily agree. In any event, Movants have taken no steps to have this Court recognize a security interest.

[7] "Ordinarily, liens and other secured interests survive bankruptcy." Farrey v. Sanderfoot, 500 U.S. 291, 297 (1991). Movants do not explain how dismissal would destroy their secured claim.

[8] Debtor would not receive a discharge upon dismissal and would therefore continue to owe Movants.

[9] Every other creditor remaining would be paid before dismissal. The amount of the other creditors' claims are de minimus, compared to the $1.577 million on deposit and the claims now being asserted by MMLP and Hendricks of close to another $1.0 million.

Page -6-

converted so that all creditors have some chance of being paid.

**CONCLUSIONS OF LAW**

1. Bankruptcy Code section 1112 provides, in part:

    (b)(1) ... [O]n request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.
    ...
    (4) For purposes of this subsection, the term 'cause' includes--
    (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
    ...
    (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court[.]

2. The Court finds that there is little likelihood of rehabilitation in this case because the assets are substantially gone and Debtor is no longer operating its business. Debtor also failed to file a new plan by April 7, 2008 and has affirmatively stated that it will not file another plan. Therefore, cause exists to convert or dismiss.

3. In re Mazzocone, 183 B.R. 402, 414-16 (Bankr. E.D. Pa. 1995), aff'd. 200 B.R. 568 (E.D. Pa. 1996) lists ten factors that suggest dismissal of a chapter 11 case is more

appropriate than conversion as follows: (1) the debtor and
the United States trustee both favor dismissal; (2) state
law proceedings are poised to go forward; (3) the debtor no
longer wishes to utilize the bankruptcy process for any of
its intended purposes; (4) pending disputes are in the
nature of a two-party dispute involving state law issues;
(5) protection against unlawful dissipation of assets sought
by a creditor is also clearly available under state law; (6)
a creditor's preference for conversion is partially in the
nature of forum shopping;[10] (7) the ability or interest of a
chapter 7 trustee to assist a creditor regarding the alleged
dissipation of assets and the pursuit of the creditor's
claim is unclear or non-existent; (8) conversion entails
added administrative expenses; (9) no allegations exist that
preference recoveries or other bankruptcy causes of action
will be lost if the case is dismissed; and (10) dismissal
preserves the time and resources of the bankruptcy court
from onerous and time consuming non-bankruptcy related
issues. The Court finds all of those factors present in
this case. Specifically, 1) Debtor has sought to dismiss
and the United States Trustee has not objected; 2) there is

---

[10]Although "forum shopping" is commonly reviled, any counsel would be remiss in not at least considering the tactical advantage it might provide to the client. The Court considers that factor here because it is part of the Mazzocone dismissal test.

Page -8-

Case 06-10011-s11   Doc 183   Filed 08/14/08   Entered 08/14/08 09:55:42 Page 8 of 13

a pending case between the remaining parties, originally filed in state court but then removed to federal court, that can be immediately pursued (see Conclusion of Law no. 4 below); 3) the Debtor no longer wishes to utilize the Bankruptcy Court for any of its intended purposes, such as protecting itself from creditors or reorganizing its debts; 4) the only remaining issues are in the nature of a two-party dispute involving state law issues; 5) $1.577 million is in the custody of the Bankruptcy Court and steps will be taken to transfer this to the United States District Court; if MMLP or Hendricks fear a further dissipation of assets they can apply for protection in the United States District Court; 6) MMLP's and Hendricks' motion to convert would serve the purpose of retaining jurisdiction in the bankruptcy court and could be viewed as a type of forum shopping; 7) if the case were converted the Chapter 7 Trustee would surely not assist MMLP or Hendricks in perfecting any claim they had to any remaining assets; rather, the Trustee would examine their claims and either abandon the $1.577 million or attempt to defeat their entitlement to it; 8) conversion would entail added administrative expenses for the Trustee and his or her professionals, with the potential likelihood that there would be no funds with which to pay them; 9) no one has

alleged that there are any preference recoveries or other bankruptcy causes of action that would be lost if the case is dismissed; and 10) dismissal would preserve bankruptcy court resources by not having this court devote time and energy to two-party non-bankruptcy state law issues.

4. MMLP and Hendricks objected to the Dismissal Motion for several reasons. They allege that to assist the Section 363 sale to close, MMLP and/or Hendricks contributed property worth $972,810 to the sale, which is not covered by the $1.577 million that was escrowed as part of the sale. While this may be true, this is not justification to keep Debtor's bankruptcy case alive. Debtor is not seeking a discharge, and any amounts owing MMLP and/or Hendricks will continue to be owed upon dismissal. MMLP and/or Hendricks may have a lien on some or all of the $1.577 million in escrow as proceeds from the sale of the collateral on which they had a lien. Nothing in the sale order, however, granted liens on any proceeds in excess of this $1.577 million. MMLP and Hendricks also allege that the additional amounts due them have not been determined and there is no alternative forum with jurisdiction; this is not true, as Debtor filed a case in the Second Judicial District Court against MMLP and Hendricks regarding these very issues (Case D-202-200801559, filed February 14, 2008), which MMLP and Hendricks removed

to the United States District Court for the District of New Mexico on March 7, 2008 (Case 08-cv-00239-JB-ACT). That case is still pending. The objection also asks the Court to order the Debtor to place an additional $800,000 in escrow to secure the claims of MMLP and/or Hendricks. The Court cannot do this for three reasons: 1) the objectors have not explained how their claims can become secured at this point, now that there is no collateral left with which to secure the claims, <u>see</u> 11 U.S.C. §506(a)(1) (An allowed claim is secured only to the extent of the value of the creditor's interest in the estate's interest in the collateral.); 2) any agreement to collateralize the claims with estate property should have been part of the sale motion and order and notice of the agreement should have been given to all creditors and parties in interest, <u>see</u> Fed.R.Bankr.P. 4001(d); and 3) objectors would need an adversary proceeding to obtain a lien on estate assets, <u>see</u> Fed.R.Bankr.P. 7001(2) (A proceeding to determine the validity, priority, or extent of a lien or other interest in property requires an adversary proceeding), which MMLP and Hendricks have not filed.

5. MMLP and Hendricks objected to the Payment Motion for the same reasons that they objected to the Dismissal Motion, with one additional claim: that their claims for the

property contributed to assist completion of the Section 363 sale should be afforded priority over any other claims in this proceeding. See doc 156 ¶ 9. The objectors have not explained, however, how they would be entitled to priority and they have taken no steps to establish this priority in the bankruptcy case.

6. In conclusion, the Court finds that dismissal of this case is appropriate. A separate Order will enter on the Dismissal Motion. The Court will also deny the Motion to Convert. The Court also finds that it should grant the Payment Motion as a condition precedent to dismissal. A separate Order will enter on the Payment Motion.

_____
Honorable James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket: August 14, 2008

copies to:

Arin Elizabeth Berkson
Moore, Berkson & Gandarilla, P.C.
PO Box 216
Albuquerque, NM 87103-0216

George M Moore
Moore, Berkson & Gandarilla
PO Box 216
Albuquerque, NM 87103-0216

United States Trustee
PO Box 608
Albuquerque, NM 87103-0608

Donald A Walcott

Case 06-10011-s11    Doc 183    Filed 08/14/08    Entered 08/14/08 09:55:42 Page 12 of 13

PO Drawer 9570
Santa Fe, NM 87504-9570

Case 06-10011-s11    Doc 183    Filed 08/14/08    Entered 08/14/08 09:55:42 Page 13 of 13